UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TINA M. RATLIFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23-CV-431-ACL |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Tina M. Ratliff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite her severe impairments, Ratliff was not disabled because she could perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed.

### I.  Procedural History

Ratliff filed her applications for benefits on April 15, 2021. (Tr. 224-41.) She claimed

she became unable to work on February 4, 2021, the day after a previous denial of benefits. (Tr. 54, 235.) Ratliff alleged disability due to hip arthritis, high blood pressure, irritable bowel syndrome, left knee replacement, migraines, anxiety, depression, and degenerative disc disease. (Tr. 282, 290.) She was 52 years of age at her alleged onset of disability date. (Tr. 23.) Ratliff's applications were denied initially. (Tr. 143-52, 156-62.) On May 3, 2022, after holding a hearing, an ALJ denied Ratliff's applications. (Tr. 15-24.) On February 2, 2023, the Appeals Council denied Ratliff's claim for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Ratliff first argues that the ALJ "failed to properly evaluate the functional limitations caused by Ratliff's migraines." (Doc. 12 at 5.) She next argues that the ALJ "failed to support her assessment of Ratliff's subjective reports of chronic pain with specific reasons supported by substantial evidence." *Id.* at 9.

## II.   The ALJ's Determination

The ALJ first found that Ratliff met the insured status requirements of the Social Security Act through June 30, 2024. (Tr. 17.) She stated that Ratliff has not engaged in substantial gainful activity since her alleged onset date. *Id.* In addition, the ALJ concluded that Ratliff had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy; osteoarthritis and degenerative joint disease of the left knee, status post surgery; myofascial pain syndrome of the cervical and lumbar spine; obesity; migraine headaches; and osteoarthritis of the hands. (Tr. 18.) The ALJ found that Ratliff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 19.)

As to Ratliff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to frequent handling and fingering bilaterally; the occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; never working at unprotected heights; never operating hazardous machinery; no concentrated exposure to fumes, odors, dust, or pulmonary irritants; no exposure to concentrated levels of humidity or wetness; no exposure to extreme cold or extreme heat; no exposure to concentrated levels of vibration; and work at or up to the moderate noise level.

(Tr. 19-20.)

The ALJ found that Ratliff was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as cashier, product inspector, and packer. (Tr. 23-24.) The ALJ therefore concluded that Ratliff was not disabled.

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on April 15, 2021, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on April 15, 2021, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 24.)

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the

claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in

several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the

medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th

Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating

of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.  Discussion

Ratliff first argues that the ALJ failed to properly evaluate the functional limitations caused by Ratliff's migraines when formulating her RFC. She next argues that the ALJ erred in evaluating the consistency of her subjective complaints of pain. The undersigned will address these claims in turn.

### A.  Migraines

At Step Two, the ALJ determined Ratliff's migraine headaches to be a severe impairment. (Tr. 18.) Ratliff argues that the ALJ failed to provide an analysis of her testimony describing the severity of her migraines. She asserts the ALJ failed to identify inconsistencies between her testimony and the record, and did not explain how her migraines impacted her RFC.

When evaluating evidence of pain or other symptoms, an ALJ may not ignore a claimant's subjective complaints. *Bassinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). An ALJ may discount a claimant's subjective complaints if "they are inconsistent with the evidence as a whole." *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015). In doing so, an ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

The relevant factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) the claimant's functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence supporting the claimant's complaints. *Id.* at 1065–66; *see also* 20 C.F.R. § 404.1529(c). While an ALJ must consider these factors, she need not discuss how each factor supports her determination. *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007). Nor is an ALJ required to cite *Polaski* if she conducts an analysis pursuant to 20 C.F.R. §§ 404.1529 and 416.929. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007). If an ALJ "explicitly discredits" a claimant's subjective complaints and "gives a good reason for doing so," a court should defer to that determination. *Id.*

Here, the ALJ acknowledged that Ratliff reported migraines occurring 15 or more times a month in her Disability Report, and that she stated her migraines limit her ability "to see and focus on paperwork or anything that requires good vision" in her Function Report. (Doc. 282, 323.) At the hearing, Ratliff testified that she experiences a migraine "every day." (Tr. 67.) She stated that bright lights and loud noises aggravate the migraines, and that she must lie down in a quiet dark room after she takes her migraine medication. *Id.* Ratliff testified that a migraine typically lasts between 30 minutes and five to six hours, although on rare occasions it could last all day. (Tr. 68.) She explained that she last had a migraine lasting all day approximately one week prior to the hearing. *Id.*

The ALJ found, as a general matter, that Ratliff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with

the medical evidence and other evidence in the record.  (Tr. 20).  The ALJ did not cite *Polaski*, but she stated in her decision that she considered Ratliff's symptoms based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 16-3p.  *Id.*

The ALJ did not specifically discuss the consistency of Ratliff's allegations regarding her migraine symptoms with the evidence in the record.   When summarizing the medical evidence, the ALJ made the following references to Ratliff's migraines:

- At a March 17, 2021, pain management visit, Ratliff complained of headaches, along with other symptoms (Tr. 21, 417.)
- At an April 19, 2021, visit with family medicine physician Jennifer Blair, D.O., Ratliff reported "no relief from Nurtec[1] for migraine headaches."  (Tr. 21, 467.)
- Ratliff "still had complaints of back pain and migraine headaches" during a family medicine visit with Shawna Moore, FNP, on September 28, 2021.  (Tr. 22, 1109.)  Although not mentioned by the ALJ, Ms. Moore also noted that Ratliff reported taking at least one to two Fioricet[2] tablets most days, and that she had tried three other medications for migraines, which either provided no relief or made her drowsy or sick.  (Tr. 1109.)

The ALJ then discussed the medical opinion evidence, consisting only of the prior administrative medical findings.  Specifically, Galen Custer, M.D., expressed the opinion in July 2021 that Ratliff could perform light work, with occasional postural limitations except for

---

[1] Nurtec is indicated for the treatment of and prevention of migraines.  *See* WebMD, http://www.webmd.com/drugs (last visited September 17, 2024).

[2] Fioricet is indicated for the treatment of migraines.  *See* WebMD, http://www.webmd.com/drugs (last visited September 17, 2024).

unlimited balancing; frequent handling and fingering bilaterally; and environmental limitations of avoiding concentrated exposure to extreme cold and heat, wetness, humidity, noise, vibration, hazards, fumes, odors, dust, gases, and poor ventilation. (Tr. 23, 100-02.) In September 2021, Paul Ross, D.O., found Ratliff had the same limitations, except for frequent rather than unlimited balancing. (Tr. 23, 120-22.) The ALJ found these opinions "persuasive and consistent with the treatment records." (Tr. 23.) She explained that, "[a]s noted above, she had a normal gait and extremities on several visits, she had a negative straight leg raise, and she noted improvement during her March and June 2021 visits." *Id.*

In determining the RFC, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"). "A summary of the medical record does not fulfill the narrative discussion requirement." *Pierce v. Saul*, No. 4:19-CV-1886 ACL, 2020 WL 5642311, at *8 (E.D. Mo. Sep. 22, 2020). The ALJ, however, is not required to make explicit findings for every aspect of the RFC. *Id.* (citing *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003)). "[T]he ALJ's failures to include a narrative discussion of Plaintiff's RFC, standing alone, do[ ] not necessarily require remand." *Murray v. Kijakazi*, No. 4:20-CV-484 PLC, 2022 WL 407140, at *8 (E.D. Mo. Feb. 9, 2022). "[A]n arguable deficiency in opinion-writing technique does not require [a court] to set aside an administrative finding when that deficiency had no bearing on the outcome." *Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) (internal quotations omitted). However, remand is warranted "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence

supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review); *Pettit v. Apfel*, 218 F.3d 901, 903-04 (8th Cir. 2000) (same).

Here, the ALJ provided no discussion of Ratliff's migraines in explaining her RFC determination.  The only explanation provided for adopting an RFC consistent with the state agency physician was that Ratliff's gait and extremities were normal on several visits, she had a negative straight leg raise test, and she noted improvement during visits in March and June of 2021.  (Tr. 23.)  This statement relates only to Ratliff's musculoskeletal impairments and does not address Ratliff's migraine symptoms.  In fact, the ALJ makes no reference whatsoever to Ratliff's migraines other than the three references cited above in her summary of the medical evidence.

The ALJ included environmental limitations in Ratliff's RFC, including a limitation to moderate noise.  These limitations were presumably to accommodate Ratliff's migraines, as Ratliff testified that loud noises aggravate her migraines.  The ALJ did not, however, include restrictions for all of Ratliff's alleged symptoms experienced due to her migraines.  Ratliff testified that both loud noises and bright lights aggravate her migraines, and that she must lie down in a quiet dark room for anywhere between 30 minutes and all day, despite the medication she was taking for the migraines.  If Ratliff's allegations were fully credited, they would result in a level of absenteeism inconsistent with the performance of work activity.

In sum, the Court finds that the ALJ did not explain the purported inconsistencies between Ratliff's statements regarding the frequency and severity of her migraines and the evidence in the record.  Without further explanation, the Court is unable to determine whether

the ALJ properly discounted her statements. As a result, the ALJ's RFC determination lacks the support of substantial evidence. The Court will therefore remand this case for further evaluation of Ratliff's migraines.

### B. Pain Complaints

Ratliff next argues that the ALJ failed to support her assessment of Ratliff's subjective reports of chronic pain resulting from her degenerative disc disease of the lumbar spine with radiculopathy, osteoarthritis, degenerative joint disease of the left knee, osteoarthritis of the hands, and myofascial pain syndrome of the cervical and lumbar spine. Ratliff contends that her pain symptoms persisted despite treatment including pain management, steroid injections, facet injections, medial branch block, prescription medications, and knee surgery. She argues that the ALJ's analysis of Ratliff's subjective reports of pain was limited to a conclusory statement that failed to support her analysis.

The ALJ summarized the medical evidence regarding Ratliff's physical complaints during the relevant period, including her pain management treatment and objective testing. (Tr. 21-22.) She stated that, although Ratliff continued to experience low back and lower extremity pain, the treatment records "do not show signs indicating an inability to ambulate or grasp items." (Tr. 22.) The ALJ concluded that, "[o]verall, given her normal gait and extremities on several visits, her negative straight leg raise, and her noted improvement during her March and June 2021 visits," the record supports a reduced light RFC. *Id.*

The ALJ did not discuss any of the other *Polaski* factors, such as Ratliff's daily activities, work history, or side effects from medication, nor does she point to any inconsistencies in the record. Although subjective complaints can be discounted if there are inconsistencies in the evidence as a whole, here the ALJ failed to specifically detail the inconsistencies in Ratliff's

testimony and the record that caused the ALJ to reject Ratliff's complaints. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The only relevant factor discussed by the ALJ was the objective medical evidence.

The undersigned has already found that the ALJ erred in assessing Ratliff's subjective allegations regarding her migraines and will remand this matter on this basis. The ALJ should also properly evaluate Ratliff's pain complaints on remand.

## Conclusion

In sum, the ALJ erred by failing to detail the inconsistencies in Ratliff's testimony and the record that caused the ALJ to reject Ratliff's subjective complaints regarding her migraines. As a result, there is not substantial evidence to support the ALJ's evaluation of Ratliff's subjective complaints or RFC determination. Upon remand, the ALJ should specifically address the frequency and severity of Ratliff's migraines, explain why Ratliff's statements regarding the frequency and severity of her symptoms of migraines and pain were consistent or not consistent with the record, and assess an RFC that addresses the impact of her migraines on her ability to work.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of September, 2024.